Slip-Op 25-143

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE UNITED STATES, | |
| Plaintiff, | |
| v. | Before: Joseph A. Laroski, Jr., Judge |
| RAGO TIRES, LLC, | Court No. 24-00043 |
| Defendant. | |

## OPINION

[Granting plaintiff's motion for default judgment in customs penalty action.]

Dated: November 12, 2025

Brett A. Shumate, Assistant Attorney General, and Patricia M. McCarthy, Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice of Washington, D.C., for plaintiff United States. With them on the motion were Franklin E. White, Jr., Assistant Director, and Christopher A. Berridge, Trial Attorney.

Laroski, Judge: The United States ("Government") moves for default judgment against Rago Tires, LLC ("Rago" or "Defendant") to recover civil penalties pursuant to 19 U.S.C. § 1592 ("section 1592"). The Government requests that the U.S. Court of International Trade ("CIT" or "USCIT") order Rago to pay a civil penalty of $56,435.48 for a section 1592 violation based on gross negligence, or, in the alternative, $28,217.74 for a violation based on negligence, in accordance with USCIT Rule 55. Pl.'s Mot. for Default J. at 3–5 (ECF No. 14) ("Gov. Mot.").

On December 10, 2024, the Clerk of the Court entered default against Rago after Rago failed to plead or otherwise defend this action as required by USCIT Rule 55(a).  See Entry of Default (ECF No. 11).  The court exercises jurisdiction under 28 U.S.C. § 1582(1), which provides exclusive jurisdiction over civil actions brought by the United States to recover civil penalties under section 1592.

For the reasons discussed below, the court grants the Government's motion for default judgment.  The court concludes that Rago violated section 1592(a) by means of negligence – but not gross negligence – in connection with the entry at issue.  Although the company's filing error was material, the facts do not evince willful, wanton, or reckless misconduct.  Considering the limited scope of the violation and Rago's subsequent corrective actions, the court imposes a civil penalty of $14,108.87 – corresponding to the total amount of initially unpaid cash deposits – as well as post-judgment interest under 28 U.S.C. § 1961 and costs in accordance with USCIT Rule 55(b).

## BACKGROUND

On February 15, 2019, the Department of Commerce ("Commerce") published antidumping ("AD") and countervailing duty ("CVD") orders on truck and bus tires from the People's Republic of China ("China") (collectively, the "Orders"), with rates of 2.83 percent *ad valorem* and 42.16 percent *ad valorem*, respectively.  Compl. ¶ 5 (ECF No. 2) ("Compl.").  Both Orders cover tires with a truck or bus size designation, including certain merchandise classifiable under subheading

Court No. 24-00043                                                                Page 3

4011.20.1015 of the Harmonized Tariff Schedule of the United States ("HTSUS").

Id. (citing 84 Fed. Reg. 4434-01; 84 Fed. Reg. 4436-01).

On or about February 18, 2019, Rago caused the entry of truck and bus tires

from China under HTSUS number 4011.20.1015, through entry number

9RQ15125606.  Compl. ¶¶ 4, 6.  Although Rago specified the correct HTSUS

classification, Rago incorrectly categorized the merchandise as a Type 01 entry

rather than a Type 03 entry, thereby falsely indicating that the goods were *not*

subject to the applicable Orders.  See Compl. ¶ 7.

Because Rago declared the entry as Type 01, Customs and Border Patrol

("Customs") did not collect the required cash deposits at entry.  Under the Orders,

the company should have paid $14,108.87 in combined AD and CVD cash deposits.

See Compl. ¶¶ 12–13; Gov. Mot. at 3.  On May 30, 2019, Customs rejected the entry

and instructed Rago to recode the entry as Type 03 and remit the required deposits.

Compl. ¶ 13.  On June 28, 2019, Rago corrected the entry to Type 03 but did not pay

the associated cash deposits, instead annotating the entry summary with "Surety

#998."  Compl. ¶ 14.  Rago later paid the outstanding antidumping and

countervailing duties. Compl. ¶ 15.

On or about March 31, 2022, Customs issued a pre-penalty notice to Rago

stating that Customs intended to issue a $56,435.48 penalty for gross negligence or

$28,217.74 for negligence.  Compl. ¶ 16.  Customs later issued a penalty

determination in the amount of $56,435.48, finding gross negligence, or negligence

in the alternative.  See Compl. ¶ 17.  Rago did not respond to the pre-penalty and

penalty notices and has not paid any portion of the penalty to date.  Compl. ¶ 18.

After Government's counsel exchanged emails regarding the outstanding

penalty with the designated owner and authorized agent of Rago, Mr. Rafael

Barajas, in January and February 2024,[1] the Government filed this action on

February 14, 2024.  Compl. at 1, 14; Resp. to Court's Request/Order in Letter from

May 31, 2024 and Alt. Mot. for Extension of Time to Serve and Authorize Service by

Mail or Publication at 3 (ECF No. 6).

## STANDARD OF REVIEW

Under section 1592(e)(1), which governs fraudulent, grossly negligent, and

negligent entries of merchandise into the United States, "all issues, including the

amount of the penalty, shall be tried *de novo*."  19 U.S.C. § 1592(e)(1).  Accordingly,

the court conducts an independent review to determine whether the well-pleaded

facts establish a violation of section 1592, and if so, the penalty amount to impose.

To bring a civil penalty claim in this court, the Government must first perfect

the claim in the administrative process, as section 1592(b) prescribes.  United

States v. Jean Roberts of Cal., Inc., 30 C.I.T. 2027, 2030 (CIT 2006).  First, Customs

must issue a pre-penalty notice that describes the alleged violation, states the

requested penalty amount, and affords the importer a reasonable opportunity to

make oral and written representations.  19 U.S.C. § 1592(b)(1).  After considering

any such representations, Customs may issue a penalty notice stating the final

---

[1] The Government did not name Mr. Barajas as an individual party to this action.

determination and penalty amount.  19 U.S.C. § 1592(b)(2).  If the importer does not

pay the applicable penalty, the Government may commence an action in this court

to recover it.  28 U.S.C. §1582(1); see also 19 U.S.C. § 1592(e)(1) (requiring *de novo*

review of all issues).

In assessing the penalty amount under section 1592(c), the court is not bound

by the administrative determination below or by the statutory maximum.  19 U.S.C.

§ 1592(c).  Rather, the court determines the penalty amount *de novo* within

statutory limits, consistent with the statute's purposes and the circumstances of the

violation.  See United States v. Complex Machine Works Co., 83 F. Supp. 2d 1307,

1312 (CIT 1999); United States v. Cruzin Cooler, 459 F. Supp. 3d 1370, 1380 (CIT

2020).  In doing so, the court does not presume that the maximum statutory penalty

is the most appropriate, nor does it afford any special weight to specific penalty

amount that the government seeks.  See Complex Machine, 83 F. Supp. 2d at 1312.

## LEGAL FRAMEWORK

### I.  Default Judgment Under USCIT Rule 55

USCIT Rule 55 describes when this court may enter a default judgment.

Under Rule 55(a), when "a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise defend, and that failure is shown by affidavit

or otherwise," the clerk must enter default.  Subsequently, Rule 55(b) describes

when a plaintiff may seek a judgment from this court.  When the plaintiff's claim is

for a sum certain, or a sum that can be made certain by computation, the court –

upon receiving a proper motion and supporting affidavit – must enter judgment for

that amount and may also award costs.  USCIT R. 55(b).

In the default judgment context, this court accepts as true all well-pleaded

factual allegations in the complaint.  See United States v. Puentes, 219 F. Supp. 3d

1352, 1357 (CIT 2017).  While the defaulting party effectively admits to the *facts* in

the complaint, nevertheless, those unchallenged facts alone do not automatically

justify the legal conclusion that the moving party asserts, nor do they automatically

justify the particular penalty sought.  See id. at 1358 (noting that "when a court

accepts factual allegations as true, it does not also accept legal conclusions as true");

United States v. Rupari Food Servs., Inc., 298 F. Supp. 3d 1347, 1359 (CIT 2018)

(citation omitted).  Thus, an entry of default alone is not sufficient for judgment; the

court must still determine whether the unchallenged facts establish a violation of

section 1592 and whether the Government's requested remedy falls within statutory

bounds.  Puentes, 219 F. Supp. 3d at 1358.

Accordingly, before granting a motion for default judgment, the court must be

satisfied that (1) the well-pleaded facts establish each element of the Government's

claim under section 1592; and (2) the law and the facts support the penalty sought.

These requirements ensure that even in the absence of adversarial proceedings – a

bedrock component of our legal system – the court's judgment rests on firm legal

grounds.

Court No. 24-00043                                                    Page 7

## II. Remedies and Penalties Under 19 U.S.C. § 1592

Section 1592 provides civil penalties for fraudulent, grossly negligent, and negligent entries of merchandise into the United States.  19 U.S.C. § 1592.  The statute provides that "no person, by fraud, gross negligence, or negligence may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of . . . any document or electronically transmitted data or information, written or oral statement, or act which is material and false."  19 U.S.C. § 1592(a)(1)(A)(i).

This court has consistently recognized that a misclassification or other misstatement on entry documentation constitutes a "false statement" for purposes of section 1592(a).  See United States v. Int'l Trading Servs., LLC, 222 F. Supp. 3d 1325, 1332 (CIT 2017).  A statement is "material" under section 1592 when it has the "natural tendency to influence or is capable of influencing agency action," which includes Customs determinations regarding classification, valuation, admissibility, and duties owed.  19 C.F.R. pt 171, app. B(B) (2009).

The statute identifies three levels of culpability: 1) negligence, 2) gross negligence, and 3) fraud.  Section 1592(e) specifies the burden of proof required for each alleged level of culpability, and subsection (c) sets out the maximum penalties available.  19 U.S.C. § 1592(e); 19 U.S.C. § 1592(c).

### A.    Negligence

In a negligence-based section 1592 claim, the Government need only prove that a material false statement or omission took place – after which, the burden

shifts to the importer to show that it exercised reasonable care. 19 U.S.C.

§ 1592(e)(4). In the section 1592 context, both acts and omissions can be negligent,

so long as the importer fails to exercise the reasonable care and competence

expected of a person in similar circumstances when (a) making statements in

connection with the importation of merchandise, or (b) performing a material act

required by statute or regulation. See 19 C.F.R. pt. 171, app. B(C)(1). Crucially,

under this burden-shifting framework, if the importer fails to respond, the

Government automatically proves negligence as long as it can point to a material,

false statement or omission, even without providing further evidence of fault or

culpability. See Cruzin, 459 F. Supp. 3d at 1377. The penalty for a negligent

violation, in turn, may not exceed the lesser of the following: (a) the domestic value

of the merchandise; or (b) two times the lawful duties, taxes, and fees of which the

United States is or may be deprived. 19 U.S.C. § 1592(c)(3).

### B.    Gross Negligence

Where the alleged violation is based on gross negligence, the Government has

the burden of proof to establish all elements of the alleged violation. 19 U.S.C.

§ 1592(e)(3). Gross negligence involves conduct done with actual knowledge of, or

wanton disregard for, the relevant facts and with indifference to, disregard for, the

importer's obligations under the statute. See 19 C.F.R. pt. 171, app. B(C)(2); United

States v. Ford Motor Co., 463 F.3d 1286, 1292 (Fed. Cir. 2006). Put differently, to

demonstrate gross negligence, the Government must prove that defendant engaged

"willfully, wantonly, or with reckless disregard in its failure to ascertain both the

relevant facts and the statutory obligation, or acted with an utter lack of care."

Ford Motor Co., 463 F.3d at 1292.  A grossly negligent violation of section 1592(a)

warrants a penalty of up to four times the lawful duties, taxes, and fees of which the

United States is or may be deprived, or the domestic value of the merchandise –

whichever is less.  19 U.S.C. § 1592(c)(2)(A).

### C.    Fraud

Under section 1592(e)(2), when the Government seeks a penalty for

fraudulent entries of merchandise, the Government must prove the violation by

clear and convincing evidence.  19 U.S.C. § 1592(e)(2).  To establish fraud, the

Government must show that the importer knowingly committed the customs

violation or "an act in connection therewith."  See United States v. Pan Pac. Textile

Grp., Inc., 395 F. Supp. 2d 1244, 1257–58 (CIT 2005).  Because direct evidence of

intent is rarely available to prove fraud, circumstantial evidence can often suffice.

Id. (noting that "it is seldom that a fraud or conspiracy to cheat can be proved in

any other way than by circumstantial evidence") (citing Thompson v. Bowie, 71 U.S.

463, 473 (1866)).  The penalty for fraud may not exceed the domestic value of the

merchandise.  19 U.S.C. § 1592(c)(1).

## DISCUSSION

### I. Liability

### A.    Rago supplied material and false information to Customs

The Government's uncontested assertions demonstrate that Rago entered

merchandise into the stream of commerce in the United States by means of a

material and false statement.  See 19 U.S.C. § 1592(a)(1).  On or about February 18,

2019, three days after Commerce issued the Orders, Rago caused the entry of such

tires under HTSUS heading 4011.20.1015.  Compl. ¶¶ 5–6.  In its entry summary,

Rago stated that the merchandise constituted a "Type 01" entry, indicating that it

was not subject to the applicable duties, when in fact the proper classification was

"Type 03," which would indicate that the duties did in fact apply.  Id. ¶¶ 7, 13.

This false statement was material.  Under section 1592, a misstatement in a

company's entry documentation is material when it affects Customs' assessment of

duties.  See Int'l Trading Servs., 222 F. Supp. 3d at 1332; Cruzin, 459 F. Supp 3d at

1376; 19 U.S.C. § 1592.  Here, the Type 01 declaration directly impacted Customs'

ability to collect AD/CVD cash deposits at the time of entry, because Customs would

have required Rago to provide cash deposits at the time of entry had Rago correctly

documented its merchandise in the first instance.  Compl. ¶ 12.  Indeed, as a result

of Rago's misstatement of entry type and failure to identify the AD/CVD orders to

which the entry was subject, Customs had to initiate a review, reject Rago's entry,

and contact Rago to request correction of the entry documentation and payment of

the unpaid cash deposits.  Id. ¶ 13.  These facts are sufficient to establish that Rago

supplied a material and false statement under section 1592(a).  19 U.S.C. § 1592(a).

### B.    Rago's misstatement was negligent

Having found a material false statement, the court next examines Rago's

degree of culpability under the statute.  Under section 1592(e)(4), once the

Government meets its burden of proof by demonstrating a material false statement

or omission, the burden shifts to the importer to prove that it nevertheless exercised

reasonable care. See Cruzin, 459 F. Supp. 3d at 1376–77; 19 U.S.C. § 1592(e)(4).

Here, the Government has satisfied its burden by asserting that Rago

declared a materially false entry type and failed to pay the applicable AD/CVD cash

deposits due at the time of entry. Compl. ¶¶ 5–12. The burden thus shifts to Rago

to demonstrate that it exercised reasonable care. Nevertheless, because Rago has

defaulted, it offers no evidence or argument to meet its burden. See Cruzin, 459 F.

Supp. 3d at 1376 (explaining that, in a default judgment case, the defaulting

importer admits the well-pleaded facts establishing liability and fails to carry any

burden to rebut negligence under section 1592); United States v. Chavez, Slip Op.

17-140, 2017 Ct. Intl. Trade LEXIS 136 at *7 (CIT 2017) (holding that defendant

could not demonstrate the necessary reasonable care to rebut negligence because

defendant failed to appear).

As a result, the unchallenged facts reflect that Rago failed to exercise

reasonable care under the circumstances. Rago had a history of importing the same

class of tires, and therefore was reasonably expected to have kept abreast of major

trade developments affecting those products, including applicable AD and CVD

orders. Compl. ¶ 11. Nevertheless, while an ordinarily prudent importer under

these same circumstances would have verified its obligations under relevant law

and prepared its entry documentation accordingly, Rago failed to do so. Because

Rago filed materially false entries under the non-AD/CVD type days after the

Orders took effect, the court concludes that Rago was negligent under

section 1592(a).  19 U.S.C. § 1592(a).

### C.    Rago's misstatement was not grossly negligent

The facts of this case do not, however, support a finding of gross negligence.

To prove gross negligence, the Government must demonstrate by a preponderance

of the evidence that the importer acted with "actual knowledge of or wanton

disregard for the relevant facts," as well as with indifference to its statutory

obligations.  See 19 C.F.R. pt. 171, app. B(C)(2); Ford Motor Co., 463 F.3d at 1292;

Cruzin, 459 F. Supp. 3d at 1376.

Here, the facts suggest inattentiveness, but they do not demonstrate that

Rago knowingly misrepresented the entry type or consciously disregarded its

obligations under law.  In its complaint, the Government asserts that the timing of

the entry, Rago's experience as an importer, and its eventual cessation of imports

provide evidence of actual knowledge or wanton disregard.  See Compl. ¶¶ 10–14,

21.  Unlike in Cruzin, however, where the defendants were grossly negligent

because they *continued* to file false entries after receiving formal compliance notices

from Customs, this case involves a single entry and no evidence of prior warnings or

repeated misconduct.  Compare Cruzin, 459 F. Supp. 3d at 1378–74 (documenting

multiple false entries, even after agency notice), with Compl. ¶¶ 13–14 (describing

Rago's single misclassification).

Nor is there evidence that Rago intended to evade duties, or that Rago's later

failure to defend bears on its knowledge or level of fault at the time of entry.  At

most, the facts reflect confusion or administrative neglect during a brief period

following the issuance of the AD/CVD orders.[2]  See Compl. ¶¶ 5–6.  Such conduct as

presented in the Complaint, while careless, does not rise to the level of wanton

disregard contemplated in section 1592.  Accordingly, the court holds Rago liable for

negligence but not gross negligence.

## II. Damages

### A.    Weighing the Complex Machine Factors to Determine Civil Penalty

Under section 1592(c)(3), a negligent violation is punishable by a civil penalty

not to exceed the lesser of (a) the domestic value of the merchandise, or (b) two

times the lawful duties, taxes, and fees of which the United States is or may be

deprived.  19 U.S.C. § 1592(c)(3).  The court assesses the penalty amount *de novo*,

without any presumption in favor of the agency's assessment or the statutory

---

[2] The Government in its complaint asserts that "[d]espite having regularly imported truck and bus tires from China under HTSUS number 4011.2010.15 for fourteen months prior to the publishing of the applicable ADD and CVD Orders, Rago Tires falsely declared entry number 9RQ1525606 as Type 01 and then abruptly ceased importing the same classification of tires even before the falsely declared entry was discovered by Customs."  Compl. at ¶ 11.  However, the Government fails to mention that no AD/CVD cash deposits were due on entries of such merchandise in the fourteen months prior to Commerce's February 15, 2019 AD/CVD orders.

The Orders arise from a petition filed in January 2016.  On March 13, 2017, the International Trade Commission (the "Commission") found that an industry in the United States was not materially injured by reason of dumped and subsidized imports of TBTs from China.  On March 17, 2017, the Commission published its final negative determination and Commerce, in turn, terminated its investigations and instructed Customs to liquidate entries of subject merchandise without regard to AD/CVD duties.  The Commission's final negative determination was appealed to the CIT, and on November 1, 2018, the court remanded the Commission's determination.  On January 30, 2019, upon consideration of the court's remand instructions and the parties' comments, and based on the record of the proceedings, the Commission found that an industry in the United States was materially injured by reason of dumped and subsidized imports of truck and bus tires from China.  Commerce's February 15, 2019 Orders resumed the collection of collection of cash deposits on the subject imports of truck and bus tires from China for the first time since March 2017.  See Truck and Bus Tires From the People's Republic of China: Antidumping Duty Order, 84 Fed. Reg. 4436 (Commerce Feb. 15, 2019); Truck & Bus Tires from the People's Republic of China: Amended Final Determination and Countervailing Duty Order, 84 Fed. Reg. 4434 (Commerce Feb. 15, 2019).

maximum.  See Complex Machine, 83 F. Supp. 2d at 1312 (the court "does not start from any presumption that the maximum penalty is the most appropriate or that the penalty assessed or sought by the government has any special weight"). Likewise, when assessing the penalty amount, this court considers a series of aggravating and mitigating factors first introduced in Complex Machine to arrive at a penalty that is reasonable, proportional, and sufficient to deter future such violations.  Id. at 1315–16.[3]  Generally, deterrence-related factors carry more weight than those focused on compensating the Government for lost revenue.  Complex Machine, 83 F. Supp. 2d at 1316.

Consistent with the Complex Machine factors and subsequent CIT case law describing section 1592 penalties, the court organizes the penalties inquiry below into four overarching categories:  (1) the importer's character and the circumstances of the violation; (2) the public interest and the need for deterrence; (3) the importer's ability to pay and the practical effect of the penalty; and (4) any other matters that justice requires.  See Cruzin, 459 F. Supp. 3d at 1380–82 (similarly organizing the fourteen Complex Machine factors into four, overarching categories of aggravating and mitigating factors).

---

[3] In Complex Machine, this court identified the following fourteen-factor balancing test to assess section 1592 penalties:  (1) defendant's good faith effort to comply with the statute; (2) defendant's degree of culpability; (3) defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) defendant's ability to pay; (8) the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue doing business; (9) that the penalty not otherwise be shocking to the conscious of the court; (10) the economic benefit gained by the defendant through the violation; (11) the degree of harm to the public; (12) the value of vindicating the agency authority; (13) whether the party sought to be protected by the statute had been adequately compensated for the harm; and (14) such other matters as justice may require. 83 F. Supp. 2d at 1315.

1. **Defendant's Character: Good Faith Effort to Comply, Degree of Culpability, and History of Prior Violations**

Rago's conduct demonstrates negligence born of inattention, not disregard. Specifically, the company incorrectly declared its entry of truck and bus tires as a Type 01 entry and delayed in remitting the cash deposits required by the AD/CVD orders on truck and bus tires from China. Compl. ¶¶ 5–8, 12–14. While these actions demonstrate a lack of reasonable care and diligence in complying with the company's trade obligations, nevertheless, other facts demonstrate a degree of good faith. For instance, when Customs requested correction of the entry documentation, Rago complied by amending the entry type as Type 03 – acknowledging that the merchandise was subject to AD/CVD orders – and ultimately paying the outstanding cash deposits. Compl. ¶¶ 13–15. Likewise, there is no evidence here of concealment, continued false statements, or prior violations, but rather a single misstep during a narrow period of regulatory change. See Complex Machine, 83 F. Supp. 2d at 1316–17 (regarding good faith, a lack of prior violations, and remedial conduct as factors mitigating the penalty amount under section 1592). On balance, then, the court views these facts as reflecting a relatively unsophisticated importer exhibiting a degree of carelessness, rather than "an utter lack of care." See Ford Motor Co., 463 F.3d at 1292. Consistent with Cruzin, where the court reduced penalties in light of eventual compliance and fairly limited misconduct, the circumstances of this case justify a penalty near the lower end of the statutory range. See Cruzin, 459 F. Supp. 3d at 1380–81.

2. **Seriousness of the Offense: Public Interest in Compliance, Nature and Circumstances of Violation, and Gravity of Violation**

Even an isolated negligent entry undermines Customs' enforcement of trade remedy laws, and the court does not discount or take lightly that harm. Rago's misclassification prevented Customs from collecting AD/CVD cash deposits at the time of entry, depriving the United States of the assurance that the ultimate AD/CVD liability owed on the entry would be secured by a cash deposit of $14,108.87 as required under the Orders upon entry. Compl. ¶ 12. Those Orders, issued to protect domestic industries from unfair pricing and to ensure a level playing field, depend on accurate Customs declarations to function effectively. See Cruzin, 459 F. Supp. 3d at 1380–81 (noting that false statements impede Customs' ability to properly administer the nation's trade laws). Nevertheless, Rago's violation here is substantially less severe than in cases involving multiple shipments under false documentation, repeated warnings, or deliberate misstatements after ample notice. Rago's violation involved a single entry, made only a few days after the Orders took effect. Compl. ¶¶ 5–6. Rago corrected the entry and eventually paid the cash deposit owed – though with a noted lack of dispatch. Compl. ¶¶ 14–15. Considering both the modest revenue impact at issue and the relatively brief timeframe between the Orders and Rago's entry, the court again concludes that the uncontested facts support a penalty below the statutory maximum. See Complex Machine, 83 F. Supp. 2d at 1313 (noting that the penalty must be proportionate to the "nature and circumstances" of the offense).

3. **Practical Effect of the Penalty: Defendant's Ability to Pay, Size of the Penalty in Relation to Defendant's Business and Effect on Ability to Continue Doing Business, and Whether the Penalty Shocks the Conscience**

Penalties under section 1592 primarily serve to deter purpose rather than to compensate. See Complex Machine, 83 F. Supp. 2d at 1315 (noting that deterrence is the most important consideration when assessing section 1592 penalties). The administration of AD/CVD orders depends upon importers' accuracy and candor in their entry filings, and each false or negligent statement, however isolated, frustrates Customs' ability to ensure fair and balanced trade. At the same time, deterrence must be proportionate. Complex Machine instructs that penalties should be sufficient to discourage future violations but not so severe as to "shock the conscience." 83 F. Supp. 2d at 1316.

Here, Rago's conduct involved a single false entry that the company corrected after Customs' intervention. Compl. ¶ 14. Additionally, there is no indication that the company has continued to import under improper classifications or otherwise disregarded trade laws. Together, these facts temper the need for deterrence and while the public interest favors a sanction to reinforce expectations of diligence and candor, it does not demand a maximal or weighty penalty amount.

4. **Public Policy Concerns: Degree of Harm to Public, the Value of Vindicating Agency Authority, and Whether the Damaged Party Has Been Compensated for Harm Caused**

The remaining Complex Machine factors – such as ability to pay, proportionality to business size, and broader considerations of fairness – do not materially aggravate or mitigate the penalty. Rago is a relatively small importer

and tire repair shop[4] with no prior penalty history and no evidence of willful

obstruction or concealment.  Compl. ¶¶ 3–4.  Nothing in the facts of this case

suggests that the company's financial condition would render a statutory penalty

unduly harsh or inequitable.  Nor is there any indication that this case presents

aggravating circumstances warranting enhancement.  The violation involved one

entry, and Customs' administrative process proceeded without obstruction.  Compl.

¶¶ 16–19.  These considerations place the matter within the lower range of

section 1592 penalties.  See Complex Machine, 83 F. Supp. 2d at 1314–16

(considering proportionality and "other matters as justice may require").

B.    Determination of the Appropriate Section 1592 Penalty Amount

After weighing the relevant statutory and equitable factors, the court

determines the appropriate penalty under section 1592(c)(3).  19 U.S.C. § 1592(c)(3).

For a negligent violation, the statute authorizes a penalty of up to the lesser of (a)

the domestic value of the merchandise, or (b) two times the lawful duties, taxes, and

fees of which the United States was or may have been deprived.  Id.  The court

exercises this authority *de novo*, without presuming that either the maximum

penalty or the agency's assessment is correct.  See Complex Machine, 83 F. Supp. 2d

at 1312.

Here, two key aggravating factors exist: first, Rago negligently entered

merchandise subject to AD/CVD orders as a non-AD/CVD entry and second, Rago

---

[4] For instance, the Government alleges that the total domestic value of the tires in
the entry at issue was $60,008.53.  Compl. ¶ 6.

initially failed to timely pay the required cash deposits, even after correcting the

entry.  Nevertheless, the court also credits several mitigating factors:  the violation

was isolated, Rago corrected the entry, and there is no indication of concealment,

prior misconduct, or a repeated lack of candor.

Balancing the above considerations, and guided by the <u>Complex Machine</u>

factors, the court concludes that a penalty equal to the amount of initially unpaid

cash deposits appropriately reflects the relatively benign nature of the offense while

ensuring adequate deterrence.  The court therefore imposes a civil penalty of

$14,108.87 for Rago's negligent violation of section 1592(a).  <u>See</u> 19 U.S.C. § 1592(a).

C.    **The Government is also entitled to post-judgment interest and costs**

Under section 1961, the United States is entitled to post-judgment interest

on any money judgment recovered in a civil case.  <u>See</u> <u>Cruzin</u>, 459 F. Supp. 3d at

1382 (applying section 1961 post-judgment interest as a remedy for a section 1592

violation in the context of a default judgment); 28 U.S.C. § 1961.  Interest shall

accrue from the date of entry of judgment until payment in full, at the rate

prescribed by federal law.  In addition, under USCIT Rule 54(d), and Rule 55(b), the

Government is entitled to recover costs associated with this action.

### CONCLUSION

For the reasons discussed above, the court grants the Government's motion

for default judgment.  Rago negligently entered merchandise into the United States

in violation of 19 U.S.C. § 1592(a), but Rago's conduct does not rise to the level of

gross negligence.  The court imposes a civil penalty of $14,108.87, corresponding

Court No. 24-00043                                                                 Page 20

precisely to the amount of initially unpaid cash deposits, together with post-

judgment interest and costs.

Judgment will enter accordingly.

　　　　　　　　　　　　　　　　　　　　/s/　　Joseph A. Laroski, Jr.　　

　　　　　　　　　　　　　　　　　　　　Joseph A. Laroski, Jr., Judge

Dated: November 12, 2024

　　　　　New York, New York